377 So.2d 1076 (1979)
John L. DAVIS and Prentiss Brooks
v.
STATE of Mississippi.
No. 51613.
Supreme Court of Mississippi.
December 19, 1979.
Travis T. Vance, Jr., H. Gerald Hosemann, Vicksburg, for appellants.
A.F. Summer, Atty. Gen. by Susan L. Runnels, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and COFER, JJ.
PATTERSON, Chief Justice, for the Court:
John L. Davis and Prentiss Brooks appeal convictions for armed robbery and sentences of life imprisonment without parole obtained in the Circuit Court of Warren County. Their assignments of error raise essentially two questions: (1) Did the evidence, which included in-court and out-of-court identifications of the appellants, sufficiently support the jury's verdict, and (2) *1077 did the trial court err in admitting during the state's case in chief evidence of prior convictions pursuant to Mississippi Code Annotated section 99-19-83 (Supp. 1978), the habitual criminal statute? We affirm.
The state's case is based upon the testimony of Paula Mitchell, age twenty-one, clerk of a Pack-n-Pay, Inc. convenience store in Vicksburg. She testified that at about 7:00 p.m. on Saturday, May 20, 1978, two strange black males entered the store, purchased two beers, asked if her boss was in, loitered briefly and left, returning at about 8:45 p.m. When they returned, one of them walked behind the counter and seized her around the chest, putting a knife to her throat and saying to the other, "Get the money man." One of them commanded, "Don't holler or I'll hurt you." After rifling the register, one grabbed her by the arm while the other put the knife away and said, "You have to go with us."
They forced her to a car outside, pushed her into the front seat between them, held her head down out of view, and threatened to "blow her brains out" if she screamed. They then drove outside of town beside the river, pulled her out of the front seat, and pushed her into the back seat. One of the robbers then raped her, after which the other committed an offensive sexual contact with the victim. The two then divided the money, gave Mitchell $2 "for cab fare," and departed the scene in the car, leaving their barefoot victim. Walking to a nearby highway, Mitchell hitched a ride to Ryan's Coal Yard, a liquor store, where the proprietor called the police.
Mitchell's unequivocal identifications, both in-court and out-of-court, of Prentiss Brooks and John L. Davis appear to have been untainted by any manner of police impropriety. She first identified Brooks as one of her assailants on the day of the crime when, without the aid of any suggestive clues, she picked his picture out of a mug shot book. She later identified Brooks once more in a nonsuggestive pre-indictment lineup, basing her identification essentially upon facial features. When identifying Brooks in the lineup, she asked that Brooks's mouth be opened. He opened his mouth, and as she suspected he had teeth missing, a feature which enhanced the certainty of her identification.[1] She denied that that the police in any way suggested that Brooks had teeth missing or had otherwise directed her attention to him. She testified that while the two robbers were in the Pack-n-Pay she observed them with little interruption. She stressed that they wore nothing to obstruct their faces, noted that one was taller than the other, and recalled the general appearance of their clothing.
On the Monday following the Saturday on which the crime was committed, Mitchell came back to the police station to give a statement. At that time, she looked through a mug shot book not presented to her on the night she identified Prentiss Brooks. In it she found, again without suggestive clues, the picture of John L. Davis, who she identified as her other assailant. A lineup then took place, and Mitchell once more identified Davis, based solely upon her independent recollection of her harrowing May 20 experience, according to her testimony.
Mitchell's in-court identification of Davis and Brooks exhibited not the slightest hint of wavering despite exhaustive attempts to impeach her testimony. She said she had looked them "square in the face" at the time of the crime and was "very positive" of their identities, having "no doubt in her mind." Her out-of-court identifications, each made promptly following the offense, appear no less certain.
Mitchell also testified to numerous physical details which corroborated her identification: She stated that on the glove compartment of the car in which she was abducted she noticed the word "Impala." She observed the knob on the gearshift was missing, and this detail was verified by the *1078 car owner. Outside the car, she saw a "Go Gators" bumper sticker. She further identified the car by color. On direct examination, she identified a photograph depicting a car, linked in later testimony to the ownership of Davis's mother-in-law. She testified the car, a light blue Impala with a missing gearshift knob and a "Go Gators" bumper sticker, had been used to abduct her from the scene of the robbery. A forensic serologist further corroborated Mitchell's testimony by establishing compatibility of carpet pilings found on Mitchell's clothing and hair from her head with similar pilings and hair recovered from the blue Impala.
The defense proceeded on the theory of alibi. Elise Harper, Davis's mother-in-law, testified that on May 20, 1978, she loaned her car to John L. Davis. She stated that Davis returned home between 6:30 and 7:00 p.m., and gave the keys to his sister-in-law. She stated the car did not leave the driveway for the rest of the night and that Davis and her daughter went to the Turf Cafe at about 8:00 p.m. However, in a signed statement taken by Police Officer Phil Solomon, Mrs. Harper indicated she did not know what time Davis got home on Saturday, May 20, 1978.
Shirley Wallace, Davis's sister-in-law, testified that Davis left in the Impala on the afternoon of May 20, 1978, and returned no later than 7:30 p.m., leaving without the car shortly thereafter to go out with his wife. She stated that no one drove the car between 7:30 p.m. Saturday night and the following morning.
Davis's wife testified similarly, stating that when her husband came home around 7:00 p.m. that Saturday, he got ready to go out and left with her at about a quarter of eight to go to the Turf Cafe where they remained together continuously until about 6:30 a.m. the following morning. She added that she did not see Prentiss Brooks at the Turf Cafe. Jimmy Foote, Jr. seconded the testimony of Mary Davis, testifying that on the night of May 20, 1978, he arrived at the Turf Cafe at about 7:30 and remained until 9:00 a.m. the following morning. Foote stated that John L. Davis and his wife Mary arrived at the cafe at about 7:30 or 8:00 p.m. and did not leave until the following morning.
John L. Davis testified consistently with his wife and Jimmy Foote with respect to his presence at the Turf Cafe between 8:00 p.m. on the Saturday the crime was committed and about 6:30 a.m. the following morning. However, on cross-examination, Davis did admit that he spent time with Prentiss Brooks "shooting dice" on that Saturday at the "Tick Tock" business establishment between about 6:30 p.m. and 6:45 p.m.
Prentiss Brooks also proffered an alibi defense. Jessie McGloster Carpenter testified that on May 20, 1978, he gambled with Prentiss Brooks at the "Tick Tock" beginning at about 3:00 p.m. and ending at about 7:30 or 8:00 p.m. He stated that John L. Davis also appeared at the dice game but that Davis left separately before Brooks. James Bell also testified that he saw Brooks and Davis at the "Tick Tock" shortly before dark on the day of the crime, adding that Brooks had tried to borrow money from him that evening. Essex McLendon stated that he saw Brooks at the "Tick Tock" at about 8:45 or 8:50 p.m., the very time the robbery took place according to the victim, Paula Mitchell. McLendon indicated, however, that he did not see Prentiss Brooks after about 8:45 p.m. and that he did not see John Davis. Police Officer Roosevelt Bunch stated that he saw Prentiss Brooks at the "River Go-Go Club," within one block of the "Tick Tock," as the sun was going down on May 20, 1978. Bunch couldn't "pinpoint" the time at which this meeting occurred. Dale Price also testified that he saw Brooks at the River place at about 9:00 p.m. on May 20, 1978. Price added that he did not see Davis that evening but saw Brooks get into a truck with George McGuide at about 9:15 or 9:30 p.m. and saw Brooks once more at about 9:45 at "The Ponderosa."
The state in rebuttal put Officer Phil Solomon on the stand once more and through him introduced an out-of-court admission voluntarily given by John Davis during custodial interrogation on the day of his arrest. Davis admitted that he had *1079 been gambling with Prentiss Brooks on the day of the robbery and had ridden in a 1975 blue Chevrolet with Brooks that day. He went no further than this in implicating himself.
Pursuant to Mississippi Code Annotated section 99-19-83 (Supp. 1979), the state introduced evidence of prior convictions had against both Brooks and Davis. Davis's previous felony convictions included armed robbery and burglary, offenses tried separately and arising out of distinct incidents. Brooks's included grand larceny, burglary, and receipt of a firearm while under a felony conviction (an offense under the United States Code), all offenses having been tried separately and arising out of distinct incidents.
From the evidence we think it clear that the appellants' first assignments of error relating to the sufficiency of the evidence lack merit. First, the testimony of Paula Mitchell amply supports a finding that her identifications of the appellants were admissible under the standards laid down in United States v. Wade, note 1, supra; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). See also Scott v. State, 359 So.2d 1355 (Miss. 1978). Being admissible, the weight of the evidence toward guilt became a matter for the jury to determine. Second, the evidence conflicted, and we have held many times that the jury's resolution of credibility issues will not be upset by this Court on review. Freeland v. State, 285 So.2d 895 (Miss. 1973); Clanton v. State, 279 So.2d 599 (Miss. 1973); Nash v. State, 278 So.2d 779 (Miss. 1973); Campbell v. State, 278 So.2d 420 (Miss. 1973).
While we find the assignments of error directed to the introduction of prior convictions more troublesome, we nonetheless are of the opinion they do not warrant reversal. We doubt that introduction of prior convictions during the state's case in chief for the sole purpose of raising the "forbidden inferential sequence"[2] of specific instances of bad conduct/bad character/probable conforming conduct on the occasion in question, would comport with the command of the Due Process Clause; but where, as here, an indictment has been laid under the habitual criminal statute and a cautionary instruction has been given to the jury regarding the prohibition against using prior convictions as substantive evidence of guilt of the cardinal charge, the proof falls outside of the "forbidden inferential sequence." Moreover, this has been held to be so even where, as here, the accused offers to stipulate to the prior convictions. Spencer v. Texas, 385 U.S. 544, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). Any doubt which we might have concerning the soundness of the foregoing proposition must give way to the Spencer decision by which we are bound and which requires affirmance.
This is not to say that we are powerless to prescribe procedural rules for the courts of this state, because indeed we are not. Newell v. State, 308 So.2d 71 (Miss. 1975). We exercised this power on August 15, 1979, in adopting the Mississippi Uniform Criminal Rules of Circuit Court Practice; Rule 6.04 follows:
Rule 6.04.
PROCEDURE FOR PROOF OF PRIOR CONVICTIONS UNDER THE HABITUAL CRIMINAL STATUTE
In cases involving enhanced punishment for subsequent offenses under the Habitual Criminal Statute Miss. Code Ann. § 99-19-83 (Supp. 1978):
(1) The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous felonies, the state or federal jurisdiction of previous conviction, and the date of judgment.
The indictment shall not be read to the jury.
(2) Separate trials shall be held on the principal charge and on the charge of previous convictions. In the trial on the *1080 principal charge, the previous convictions will not be mentioned by the state or the court except for impeachment purposes.
(3) If the defendant is convicted on the principal charge, a hearing before the court will then be conducted on the previous convictions.
This procedure was not followed in the trial, because the trial antedated the Rule. We affirm for the reasons stated and direct the attention of the trial courts to Mississippi Uniform Criminal Rule of Circuit Court Practice 6.04 (1979), which supersedes our opinion in Lay v. State, 310 So.2d 908 (Miss. 1975).
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] We note that the propriety of requiring a suspect to display in a non-testimonial fashion some personal characteristic has been placed beyond reasonable dispute by United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
[2] See, e.g., Harrington v. State, 336 So.2d 721 (Miss. 1976).