556 So.2d 728 (1990)
Deborah Holley ROSE
v.
STATE of Mississippi.
No. 07-KA-58718.
Supreme Court of Mississippi.
February 7, 1990.
*729 David L. Walker, Law Offices of David L. Walker, Batesville, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice January 3, 1989, Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and BLASS, JJ.
BLASS, Justice, for the Court:

I.
Deborah Holley Rose was indicted by the grand jury of Panola County's Second Judicial District of the crime of Conspiracy to commit Grand Larceny in violation of Miss. Code Ann. § 97-1-1(a), as amended (1972); and Grand Larceny in violation of Miss. Code Ann. § 97-17-41 (1972). Co-indictees were Toy Franklin Coleman and Joseph Alton Ivy. Defendants were accused of stealing one EF 2000 Yamaha portable generator. The indictment accused Johnny Ray Fowler of knowingly receiving this *730 same property. The date of the crime was stated in the indictment as "on or about the 18th day of August, 1986." The indictment was amended at trial, changing the date of the alleged crime to "on or about September 9, 1986 to September 13, 1986 inclusive."
The jury found Ms. Rose guilty on both counts, and she was sentenced to serve a term of four years in the custody of MDC on each count, to run concurrently. She was fined $1,000.00 and ordered to pay all Court costs. In addition, she was found in contempt of court for her conduct in discussing the case with a prospective juror and fined $250.00. She appeals raising ten issues. Finding merit in appellant's issues two and four, we reverse and remand for a new trial. We discuss only these dispositive issues, and those which are likely to recur on remand.

II.
Joseph Alton Ivy and Toy Franklin Coleman were intermittently employed as helpers by Dixie Roofing, Inc., owned by Terry Clifford Blakely. In the summer and fall of 1986 Dixie was reroofing a building. A Yamaha 2000 portable generator, used on the reroofing project, was discovered missing at the first of September. The generator valued at approximately $700.00, was subsequently located in the possession of co-defendant, Johnny Fowler. He initially denied any knowledge of the whereabouts of the generator, but later turned himself in and surrendered the generator.
Both Ivy and Coleman, testified on behalf of the State, that they stole a generator from the jobsite in September, 1986. On September 11, 1986, Blakely's secretary called Ivy in to sweep the roof. Rose drove him to work. Coleman went with Ivy and Rose, specifically for the purpose of stealing the generator. Ivy and Coleman stole the generator from the roof and hid it in a nearby wood. Later, Rose, Coleman, and Ivy returned and retrieved the generator, placing it in the trunk of Rose's car. The generator was taken to a small garage located beside appellant's house, where it was stored until sold to Johnny Fowler.
Johnny Fowler, purchaser of the generator, testified that Rose called him and arranged a meeting with Ivy. Subsequently, he met Ivy and inspected the generator in a barn on Rose's property. The sale was completed with the payment of two $100 dollar bills, one of which, according to Ivy, was given to Rose.

III.

DID THE TRIAL COURT ERR IN OVERRULING APPELLANT'S OBJECTION TO QUESTIONS CONCERNING THE ARSON OF HER HOUSE?
Defendant contends that the State's questions, addressed to her on cross examination, concerning arson and the fact that defendant's house burned down, violated Miss.R.Evi. 404(b). She argues that this series of questions attempts to show the commission of other crimes and was introduced to establish that the defendant was the kind of person who would commit the crime for which she was on trial here, citing: Robinson v. State, 497 So.2d 440, 442 (Miss. 1986); Lancaster v. State, 472 So.2d 363, 368 (Miss. 1985); Davis v. State, 377 So.2d 1076, 1079 (Miss. 1979). In addition, defense notes that the "prior offense" must result in a conviction to be admissible, citing Elmore v. State, 510 So.2d 127, 130 (Miss. 1987); and Lightsey v. State, 493 So.2d 375, 379 (Miss. 1986).
Pertinent portions of the colloquy were:
Q. (By the state) They just decided to come up and tell him about machine guns and crimes and things?
A. (By defendant, Deborah Rose) They liked to brag.
Q. And how many different crimes did they brag about doing?
.....
Q. Okay. And did they ever talk about arson?
(OBJECTION)
THE COURT: Overruled.
Q. (By Mr. Buntin) Did you all ever talk about arson at your house, Ms. Rose?
A. I don't think so. I don't remember. If they did, I don't remember that.

*731 Q. Did you ever talk about arson with them?
A. No, sir.
.....
Q. (By Mr. Buntin) You never discussed arson with those men?
A. No, sir, I didn't.
Q. How many times has your house burned down?
A. Once.
Q. Once here?
A. Yes, sir.
Q. Did it burn down anywhere else before you moved down here?
A. I've never had another home.
This Court made the following observation in Neal v. State, 451 So.2d 743, 759 (Miss. 1984), decided prior to the adoption of Mississippi Rules of Evidence, and cited in the comments to MRE 404(b):

Evidence of prior offenses committed by a defendant, not resulting in a conviction, is generally inadmissible either for impeachment purposes or as a part of the State's case in chief. Mason v. State, 429 So.2d 569, 572-73 (Miss. 1983); Gray v. State, 351 So.2d 1342 (Miss. 1977); Mills v. State, 304 So.2d 651 (Miss. 1974); Allison v. State, 274 So.2d 678 (Miss. 1973). On the other hand, our law recognizes certain exceptions to the rule. See, e.g. Johnson v. State, 416 So.2d 383 (Miss. 1982); Mason v. State, 429 So.2d 569, 572-73 (Miss. 1983); Woods v. State, 393 So.2d 1319, 1325 (Miss. 1981).
(emphasis added)
Ms. Rose did not place her character in issue in this case. No witnesses were called to testify to her good character. The arson question was not posed to develop evidence of any criminal act with which she was charged. We have repeatedly held that the admission of evidence of unrelated crimes is reversible error, most recently in Houston v. State, 531 So.2d 598, 605 (Miss. 1988). We find that the failure to sustain defendant's objection to this question, suggesting the commission of another crime, was error.
The State contends that if the admission of this evidence be deemed error, it is harmless due to the overwhelming weight of the evidence against defendant. We do not agree. The only evidence presented was the testimony of the three co-defendants, all of whom were of dubious reputation. There is no gauge by which this court, on review, can assess the impact on the jury of the suggestion of the commission of the other crime. This error, together with the matter addressed in part IV of this opinion, has the cumulative effect of a denial to the defendant of a fair trial.

IV.

DID THE TRIAL COURT ERR IN PERMITTING TESTIMONY CONCERNING OTHER STATEMENTS?
Appellant contends that the court erred in allowing improper opinion testimony concerning differences or discrepancies in the stories of the co-defendants.
The State introduced the confession of Toy Coleman into evidence. Sheriff Bryan testified that he had also taken the confessions of Joey Ivy and Johnny Fowler. The following exchange occurred after this testimony:
Q. Did you at any time try to influence them to include the name of the defendant in their statement or try to put anything about the defendant in the statement?
A. No, sir.
Q. Sheriff, have you had occasion in the past to take statements from co-defendants who were involved in the same crime?
A. Hundreds of them, yes, sir.
Q. And in those hundreds of cases would you tell the jury whether it's usual or unusual for there to be minor differences or discrepancies in the stories of co-defendants?
A. It's usual.
MR. WALKER: I object to that, sir, on the basis that he's not an expert. Also, that's hearsay.

*732 THE COURT: I'll overrule the objection.
A. It's not unusual.
Q. Would it be unusual if there were no discrepancies in the statements between two people on the same event?
MR. WALKER: I object again, Your Honor, this time on the basis of relevancy.
THE COURT: I'll overrule the objection.
A. I would say it would be unusual.
.....
Q. All right, sir. Sheriff, can you tell us what your investigation revealed with respect to the involvement of the defendant in the theft from Thermos?
A. Yes, sir.
Q... .
A. In the entire investigation it was consistent from everybody that was involved.
MR. WALKER: Your Honor, I object on the basis of hearsay. These witnesses have been here and testified as to what occurred, and anything that Sheriff Bryan says is merely hearsay. He has no firsthand knowledge of it.
THE COURT: Any response, Mr. Buntin?
MR. BUNTIN: Well, I'll do it this way.
Q. (By Mr. Buntin) Sheriff, where the statements that you obtained from the co-defendant, Toy Coleman, Joseph Ivy and Johnny Ray Fowler, were they consistent or inconsistent with what you knew about the defendant and about your investigation?
A. Consistent.
The State cites Miss.R.Evid. 701, contending that this is proper opinion testimony. Rule 701 states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.
This Court's latest opinion dealing with lay opinion testimony is James Jackson v. State, 551 So.2d 132 (Miss. 1989) which cites Whittington v. State, 523 So.2d 966 (Miss. 1988). In Jackson the defendant was charged with the murder of his wife. The investigating officer testified that he had doubts about the defendant's story that a robbery had taken place and Mrs. Jackson was killed by an unknown assailant. The officer stated that he was unable to find any evidence that anyone, other than James Jackson, was present at the scene of the murder. Applying the two prong test of 701, this court concluded that the officer's opinion was (1) based on his personal perceptions, and (2) helpful to the determination of the important fact question of whether there was anyone else at the scene at the time of the murder. 551 So.2d at 142.
Jackson is distinguishable from this case. In Jackson, the opinion testimony was directly related to an issue in the case  the presence of a third party at the murder scene. In the case at hand, the opinion testimony concerns the truthfulness of the prosecution's witnesses. As the majority opinion in Jackson so carefully points out, the witness' testimony was on a pertinent issue, and based on his own observations and investigation. Id.
In U.S. v. Dotson, 799 F.2d 189 (5th Cir.1986), interpreting F.R.E. 701, it was held reversible error to allow government agents to offer opinions to the truthfulness of the defendant and his witnesses where those opinions were based solely on the agent's investigation. The Dotson Court stated:
In the absence of some underlying basis to demonstrate that the opinions were more than bare assertions that the defendant and his witnesses were persons not to be believed, the opinion evidence should not have been admitted
.....
We do not hold that government agents may never testify as to the truthfulness of a defendant or defense witnesses. Nor do we hold that a government agent's opinion of a witness's character *733 may never be based exclusively on what the agent learned on an official investigation. But the fact that one has conducted an investigation of the defendant, has known the defendant, or has had minimal contact with defendant's witnesses is not a sufficiently reliable basis under Rules 608(a) and 701 for that witness, over objection, to put before the jury the opinion that they are liars.
799 F.2d at 193-94.
In Whittington, the investigating officer expressed the opinion that, following his investigation he did not think Mrs. Whittington was "killed in the wreck". This court stated that the abolition of the ultimate issue rule does not result in the admission of all opinions. "It must be `helpful to a determination of the case.'" "Questions which would merely allow a witness to tell the jury what result to reach are not permitted. Owen v. Kerr-McGee Corp., 698 F.2d 236 (5th Cir.1983)." 523 So.2d at 975.
The lay opinion testimony of Sheriff Bryan was inadmissible. He, in essence, told the jury that they were to believe the stories of the three co-defendants, despite discrepancies among their accounts of the theft of the compressor. There are two reasons that this type of testimony is unacceptable. First, it is more prejudicial than probative; second, it is not based on first hand knowledge. This court, in West v. State, 249 So.2d 650 (Miss. 1971), recognized the danger of allowing a jury to be presented with what appears to be the "official" opinion of the police department that the defendant is guilty. In this case, the sheriff was allowed to express the opinion that the prosecution's witnesses were telling the truth when they implicated Deborah Rose. There is a very real danger that, due to his position as sheriff, he might unduly influence the jury when the time came to evaluate the testimony of the co-defendants. A defendant must be allowed to point out discrepancies in witnesses' accounts of events, and to have the jury determine whether those witnesses are truthful.
The admission of this lay testimony prejudiced the defendant. When added to the error earlier discussed, we are persuaded that she is entitled to a new trial.

V.

DID THE TRIAL COURT ERR IN FAILING TO GRANT DEFENDANT'S MOTION TO COMPEL?
Defendant filed a motion to compel pursuant to Uniform Criminal Rules of Circuit Court Practice 4.06 demanding statements of any informants as well as the "work product" of the prosecution. The State is not required to disclose names of informants unless the confidential informant is to be produced at a hearing or trial, or if a failure to disclose his identity will infringe the constitutional rights of the accused, or if the informant was an eyewitness to the events constituting the charge against the defendant. Rule 4.06(b)(2); Garvis v. State, 483 So.2d 312, 316 (Miss. 1986); Arnett v. State, 532 So.2d 1003, 1008 (Miss. 1988).
The court properly denied defendants motion.

VI.

DID THE CIRCUIT COURT ERR IN REFUSING TO GRANT JURY INSTRUCTION D-4?
Appellant's submitted instruction reads as follows:
D-4
The Court instructs the Jury that under the Constitution of the United States, the Jury has a paramount right to acquit an accused person for whatever reason and to find her not guilty, even though the evidence may support a conviction, and this is an important part of the jury trial system guaranteed by the Constitution.
The Court further instructs the Jury that this principle of jury nullification is as much a part of and just as important to the constitutional process as any other instruction which the Court has given to this Jury, and that in the final analysis, *734 you, ladies and gentlemen of the jury, are the sole judges of whether or not it is right and fair to convict the Accused or whether under the totality of the circumstances, the Accused should be found not guilty. In arriving at your verdict, you are not compelled to answer to anyone or to the State, nor are you required at any time by the Court or any person or party to give a reason or to be brought to accountability for your decision and vote.
The issue of whether the trial court properly denied this instruction is controlled by Davis v. State, 520 So.2d 493 (Miss. 1988) in which an identical instruction was requested and refused. This was Davis' sole issue on appeal of his conviction. In affirming that conviction, this court characterized the requested instruction as a "jury nullification" instruction, and held that although the jury does indeed have the power to acquit for any reason whatsoever, the defendant does not have the right to an instruction on that point. Courts that have considered this issue have almost uniformly held that a criminal defendant is not entitled to such instruction. 520 So.2d at 494.
The instruction was properly denied.

VII.

DID THE CIRCUIT COURT ERR IN REFUSING TO GRANT JURY INSTRUCTIONS D-14 and D-15?
Appellant's submitted instructions, D-14 and D-15 read as follows:
D-14
The Court instructs the Jury that mere presence of a Defendant or the association of a Defendant with other persons or person engaged in unlawful activities is not within itself sufficient to establish guilt on the part of a Defendant.
The Court further instructs the Jury that a person who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not hereby become a conspirator.
Before the Jury in this case may find that a Defendant or any other person has become a member of a conspiracy, the evidence in the case must show beyond a reasonable doubt that a conspiracy was knowingly formed and that the Defendants, or other person who is claimed to have been a member, did willfully, unlawfully and feloniously conspire, confederate and agree together and with each other to unlawfully commit grand larceny by stealing a generator, and if the State has failed to so prove, it is your swore [sic] duty to return a verdict of "Not Guilty".
D-15
A conspiracy is a combination of two or more persons to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means. In this case, the State must prove beyond a reasonable doubt, in order to establish proof that a comspiracy (sic) existed, is that each Defendant in some way or manner or through contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan to steal a generator as alleged in the indictment.
Before the Jury may find that a Defendant has become a member of a conspiracy, the evidence in the case must show beyond a reasonable doubt that the conspiracy was knowingly formed and that each defendant or other person claimed to have been a member, willfully, unlawfully and feloniously conspired, combined, confederated and agreed to participate in the unlawful plan, with intent to advance or further some object or purpose of the conspiracy to steal a generator and if the State has failed to prove such to your satisfaction beyond a reasonable doubt it is your swore [sic] duty, as jurors, to return a verdict of "Not Guilty".
Appellant contends that these instructions were taken from Gray v. State, 487 So.2d 1304, 1308 (Miss. 1986) and were granted in that case, therefore should be granted in this case.
*735 In Gray, this court held that an instruction which omitted necessary elements of conspiracy was not reversible error in that the omission was cured by subsequent instruction in which the missing element was included. Conspiracy is defined as:
... (A) combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy. The offense is complete without showing an overt act in furtherance of the conspiracy. (citations omitted).
There must be recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purpose. McDonald v. State, 454 So.2d 488 (Miss. 1984). If there is an agreement, then knowledge of that agreement follows. The agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators.

Griffin v. State, 480 So.2d 1124 (Miss. 1985)
Conspiracy is the combination of two or more persons to accomplish an unlawful purpose. The agreement may be shown by circumstantial evidence. There must exist some evidence that a defendant associated himself with the venture. Peoples v. State, 501 So.2d 424, 428 (Miss. 1987).
The circuit judge in this case properly denied D-14. The last paragraph of the submitted instruction misstates the law. This paragraph states that the defendant must have agreed to steal the generator, by a more formal agreement than required by the cases cited above.
Instructions S-1, S-2, and S-3, submitted by the State, adequately instructed the jury on the elements of conspiracy. Defendant initially objected to these instructions, but withdrew her objections, therefore the trial court did not err in refusing the proposed instruction which was offered to give the defendant's version of conspiracy. The court asked defense counsel if, in his opinion any element of the charge was missing from the State instructions, he responded "No, sir. I'm not making that argument." The denial of the requested instruction D-15 was at the discretion of the trial court. It was not abuse of that discretion to deny it.
We remand for a new trial due to the errors found in assignments numbers two and four.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PITTMAN, J., not participating.