# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-01706-SCT

*TRACY LEE WEST*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/1999 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM DAVIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/25/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/30/2002 |

### BEFORE McRAE, P.J., DIAZ AND EASLEY, JJ.

### EASLEY, JUSTICE, FOR THE COURT:

¶1. Tracy Lee West ("West"), is back on appeal before this Court after his prior appeal was remanded to the trial court with instruction to provide sentencing options in a capital case. West had previously been found guilty of capital murder and sentenced to death by the jury. *West v. State,* 725 So.2d 872, 895 (Miss. 1998). The conviction for capital murder was affirmed by this Court, only the sentencing was remanded for a rehearing. In May 1999, the Harrison County Circuit Court held a trial on resentencing only. On May 27, 1999, the jury returned a verdict of life without parole. From this sentence West appeals to this Court.

## FACTS

¶2. West was indicted in the Circuit Court of Harrison County for the murder of Azra Garriga Kiker, a convenience store clerk, during a robbery which occurred on or about December 16, 1992. West was indicted for the murder on March 23, 1993. This case was first appealed to this Court on the original conviction for capital murder and the sentence of a death penalty. This Court upheld the conviction for capital murder, but it overturned the sentence of death and remanded the case on the sentencing phase only. *Id.* This Court remanded the case for resentencing pursuant to Miss. Code Ann. § 97-3-21 on the basis that the jury should have been instructed on the sentencing options of life, life without parole or death. *West v. State*, 725 So.2d at 895.

<u>**STATEMENT OF ISSUES**</u>

**I. Did the court err in allowing the prior testimony of the Defendant, Tracy West, to be introduced to the jury, particularly the testimony regarding other bad acts?**

**II. Did the court erred in its ruling on removing jurors for cause during the remanded sentencing phase?**

**III. Did the errors committed at sentencing, if not individually, cumulatively require reversal?**

<u>**LEGAL ANALYSIS**</u>

**I.**

¶3. West alleges that the introduction of his previous testimony from the first trial constituted the introduction of other bad acts and affected his substantial right not to testify. West argues that, although a sentencing hearing is not a complete trial as to all the issues, it is still a trial, and as such, the defendant should be accorded all the constitutional protections he is entitled at any trial, including the right not to testify. However, this issue is without merit.

¶4. West had testified at the first trial that on or about December 15 or 16, 1992, he and two friends, Paul Rathe and Scott Cothren, left Pulaski, Tennessee, in a car that Rathe had stolen from a truck driver in Pulaski. *West v. State*, 725 So.2d at 876. They traveled to Alabama in the stolen car. *Id.* In Alabama, they robbed a convenience store, and Cothren murdered the store clerk. They then drove to Gulfport, Mississippi. *Id.* According to West's testimony, Cothren forced Rathe and West to rob another convenience store and kill the clerk. *Id*. Rathe and West robbed the convenience store's cash drawer. *Id*. West shot the clerk, Azra Garriga Kiker, two times in the back of the head. *Id*.

¶5. West contends that admitting the prior testimony from the first trial into evidence by reading the transcript to the jury at the sentencing phase forced West to take the witness stand and testify. West specifically addressed the admission of the testimony concerning the murder in Alabama at the sentencing phase.

¶6. The State introduced evidence and exhibits from the previous proceedings at the 1999 sentencing rehearing. The State introduced West's entire testimony which was read into the record for the jury at the resentencing.

¶7. West, citing *Lockett v. State*, 459 So.2d 246, 253 (Miss. 1987), argues that under Mississippi law it is well settled that proof of other crimes is inadmissible except where:

(1) the offense charged and that offered to be proved is so connected as to constitute one transaction, or

(2) where it is necessary to identify the defendant, or

(3) where it is material to prove motive and there is an apparent connection or relation between the act proposed to be proved and that charged, or

(4) where the accusation involves a series of criminal acts which must be proved to make out the offense, or

(5) where it is necessary to prove scienter or guilty knowledge.

¶8. West alleges that during the sentencing phase of a death penalty case that the State is only entitled to offer evidence that is relevant to the statutory aggravating circumstances. Miss. Code Ann. § 99-19-101(1) provides that at the sentencing hearing "evidence may be presented as to any matter that the court deems relevant to sentence, **and** shall include matters relating to any of the aggravating or mitigating circumstances." (emphasis added). The statute does not limit the evidence that can be presented at the sentencing phase to evidence relevant to the aggravating circumstances.

¶9. West cited as authority *Walker v. State,* 740 So.2d 873 (Miss. 1999), to support his position. In *Walker,* this Court stated that, "during the sentencing phase of a death penalty case, the State is limited to offering evidence that is relevant to one of the aggravating circumstances included in [§ 99-19-101]". *Id.* at 886.

¶10. The case sub judice and the case of *Walker* have one vital distinction. In *Walker*, the guilt phase and the sentencing phase were tried to the same jury which had heard all the previous testimony at trial. In the case at hand, there are two different juries, one for the guilt phase and one for the sentence phase due to the remand for resentencing only. This Court in *Walker* was addressing additional evidence presented for the first time at the sentencing phase of a trial. Assuming arguendo that this case had not been sent back on remand for resentencing, the same jury which heard the West's testimony in the guilty phase of the trial would also be deciding the sentence to be imposed during the sentencing phase.

¶11. In *Jackson v. State*, 337 So.2d 1242, 1256 (Miss. 1976) this Court stated as follows:

[A]t [the sentencing] hearing, the State may elect to stand on the case made at the first hearing, if before the same jury, or may reintroduce any part of the evidence adduced at the first hearing which it constitutes to be relevant to the particular question of whether the defendant shall suffer death or be sentenced to life imprisonment.

In addition thereto, an accused's prior record of criminal convictions, if any, may be proven as an additional aggravating circumstance whether the defendant testifies in his own behalf or not. At [the] hearing, the defendant may prove his lack of a prior criminal record as a mitigating circumstance and may also adduce proof of any other circumstance or combination of circumstances surrounding his life and character or the commission of the offense with which he is charged that would be reasonably relevant to the question of whether he should suffer death or be sentenced to life in prison.

(emphasis added).

¶12. In *Holland v. State*, 705 So.2d 307, 327 (Miss. 1997) (citing *Jackson v. State,* 337 So.2d 1242 (Miss. 1976)), this Court specially addressed the situation where the sentencing hearing has a different jury than that of the first hearing during guilt phase. Mississippi allows the State to stand on its conviction at resentencing or reintroduce the evidence from the guilt phase. *Id*.

¶13. West's argument that the testimony should not have been introduced at the sentencing phase does not stand up to scrutiny. To hold so would prevent the same jury from being able to decide both guilt and the

sentence to be imposed. We find that West waived his constitutional right to remain silent when he testified at the first trial. West should have known that his testimony may be heard and considered by the same jurors who would deliberate at his guilt and his sentence regardless of whether he testified again at the sentencing phase. If the trial had not been bifurcated due to the remand for resentencing, the same jury that heard the evidence presented during the guilt phase would have also served as jurors on the sentencing phase.

¶14. West also raised the point that even if this Court should refuse to exclude the prior testimony that the references to the murder in Alabama should have been excised from the testimony. In support of his position, West cites **Rose v. State**, 556 So.2d 728, 730-31 (Miss. 1990), stating that the admission of evidence of unrelated crimes was reversible error. In the case sub judice, this Court on the first appeal did not disturb the admission of the evidence of the Alabama murder during West's testimony at trial. Therefore, We find that the evidence of the Alabama murder should remain undisturbed and intact when presented from the guilty phase into the sentencing phase of the trial. In **Holland,** 705 So.2d at 332, the defendant in that case was not allowed to relitigate an issue in the sentencing phase decided against him at the guilt phase of the original trial.

¶15. Therefore, West's first assignment of error is without merit.

## II.

¶16. West alleges that during voir dire the trial court erred in removing two jurors challenged for cause.

¶17. The Mississippi Constitution guarantees every person the right to trial by an impartial jury. Miss. Const. art. 3, § 26. In **Billiot v. State,** 454 So.2d 445, 457 (Miss. 1984), this Court stated that, "[g]enerally a juror who may be removed on a challenge for cause is one against whom a cause for challenge exits that would likely effect his competency or his impartiality at trial." The determination of whether a juror is fair or impartial is a judicial question, and it will not be set aside except where there is a finding that the determination clearly appears to be wrong. **Carr v. State,** 555 So.2d 59, 60 (Miss. 1989).

¶18. West argues that juror number 14, Connie Davis ("Juror 14"), was erroneously struck. West argues that Juror 14 should have been allowed to remain on the jury because she would be able to consider all sentencing options.

¶19. The United States Supreme Court stated that "it cannot be assumed that a juror who describes himself as having 'conscientious or religious scruples' against the infliction of the death penalty or against its infliction 'in proper case' thereby affirmed that he could never vote in favor of it or that he would not consider doing so in the case before him." **Witherspoon v. Illinois,** 391 U.S. 510, 515, 88 S.Ct. 1770, 20 L.Ed 776 (1968).

¶20. This Court has held in **Cabello v. State,** 471 So.2d 332, 345 (Miss. 1985), that it is not error to excuse jurors in a capital murder case who indicate an inability to vote for the death penalty under any circumstances. *See* **Mack v. State,** 650 So.2d 1289, 1302 (Miss. 1994).

¶21. During voir dire, when examined as to the infliction of the death penalty, Juror 14 testified in pertinent part as follows:

> Defense: Could you consider it [death penalty] as one of the sentencing options before you?

Juror 14: No.

Defense: So there's almost no set of facts that you would - that you feel like warrant a death penalty?

Juror 14: I don't believe in the death penalty.

We find that it is clear that the trial court did not err in allowing Juror 14 to be struck for cause. Juror 14 expressed a conscientious scruple against the death penalty being a sentencing option. This issue is without merit.

¶22. West further argues that the trial court should have eliminated Karl Jones, ("Juror 4") on challenge as to cause. Juror 4 was a full time Long Beach police officer at the time of trial. He testified in open voir dire that the murder of two fellow Long Beach officers in an unrelated case weighed heavy on him. When asked whether the event of the murder of two police officers might substantially impair his ability to serve as a juror, he stated that "it could."

¶23. The trial court had some of the jurors from open voir dire to come individually into the jury room to elaborate on the answers given. Juror 4 was one of the jurors called into the jury room for further questioning by the court.

¶24. The trial court first addressed whether Juror 4 would give greater credibility to the testimony of law officers. Juror 4 testified on voir dire that he would treat the police officers that testified just like any other witness testifying without giving their testimony any greater weight as to their credibility. The trial court's questioning was as follows:

The Court: What about in the event that some fellow officers come in and testified in this case? I'm not certain that they will or they won't. But are you going to automatically give greater credibility to their testimony simply because they're law enforcement officers?

Juror 4: I could hope not. But I mean, there is a brotherhood among, you know, police officers.

The Court: Yes, sir.

Juror 4: But, you know, I would hope not. I would, you know, look at them just like, you know anyone else testifying, other than, you know, that's just my line of work also, you know.

¶25. Secondly, West argues that Juror 4 was predisposed to the death penalty and should have been struck on challenge for cause. During the individual voir dire, the trial court addressed whether Juror 4 had any conscientious scruples against the death penalty or an inclination toward automatic imposition of the death penalty. Juror 4 stated that he was predisposed in the direction of the death penalty being imposed unless the defendant showed some reason not to impose the death penalty. However, Juror 4 did not state that he could not weigh the circumstances in the case. Juror 4 was asked whether he could perform the balancing test in determining whether to impose the death penalty. The State questioned Juror 4 as follows:

State: The defense is anticipated to put on proof that they believe warrants giving a lesser sentence than the death penalty.

The law - [w]e anticipate the Court will instruct you that regardless of what your personal opinion is

right now, you are to weigh both sides. And that unless and only if the aggravating circumstances outweigh the mitigating ones beyond a reasonable doubt in your mind, then you're prohibited from returning a death penalty, unless that happens.

Can you follow - [c]an you perform that balancing test based on all the evidence and follow the Court's instructions in that regard?

Juror 4: Yes sir; I believe so.

State: Regardless of what your opinion may be right now.

Juror 4: I want to say I can, yes.

¶26. We find that Juror 4 was properly questioned during voir dire to inquire into whether he could weigh the aggravating and mitigating circumstances in determining whether it is proper to return a death penalty sentence. Juror 4 clearly stated that he would weigh the circumstances. Therefore, this issue is without merit.

¶27. West, in presenting his challenges as to cause regarding Juror 4 never directly raised a specific objection to the trial court as to any predisposition on the part of Juror 4's positions as to the death penalty. The trial court record reflects in pertinent part as follows:

Defense: Your Honor, we would request for cause. He said he had a sequester problem. He said the Long Beach event would substantially impair his way to examine facts. He had a previous simple assault on a law enforcement officer that the District Attorney's Office prosecuted. We felt like he is one that should be struck for cause.

The Court: I don't relate any of that to cause. Peremptory? Overruled.

Defense: I think I need to point out he is a full-time law enforcement officer. He actually wore his Long Beach policeman's uniform with his bullet proof vest on in the courtroom throughout the entire day.

The Court: That's still no cause.

West did not properly raise his objection as to any predisposition on the part of Juror 4.

¶28. Lastly, the jury that served during the resentencing phase which included Juror 4 did not return a sentence of death but rather life without parole. We find that since the seated jury did not impose the death penalty, West's argument as to Juror 4 is without merit. No prejudicial error can be shown since the final penalty arrived by the jury is life without parole and not death.

**III.**¶29. West argues that the alleged cumulative errors require reversal. In ***Jenkins v. State,*** 607 So.2d 1171, 1183 (Miss. 1992), this Court stated that "errors in the lower court that do not require reversal standing alone may [be] nonetheless when taken cumulatively require reversal." However, in this case sub judice, we find that no reversible error was committed. This Court stated where "there is no reversible error in any part, so there is no reversible error to the whole." ***Coleman v. State,*** 697 So.2d 777, 787 (Miss. 1997). Since West has not shown any reversible error, this assignment of error is without merit.

## CONCLUSION

¶30. The issues presented by West are without merit and do not support a basis for reversal of the trial court's judgment. Therefore, the judgment of the Harrison County Circuit Court is affirmed.

¶31. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PAROLE AFFIRMED**.

> **PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, WALLER AND DIAZ, JJ. CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. COBB, J. NOT PARTICIPATING.**

> BANKS, PRESIDING JUSTICE, DISSENTING:

¶32. In my view the trial court erred in admitting evidence of prior bad acts by the defendant because that evidence was irrelevant to the sentencing phase. The majority suggests that to so rule would prevent the same jury from considering both guilt and sentence. That is simply not true.

¶33. We are often faced with situations where, for reasons of judicial economy, evidence is admitted with respect to one issue which would be inadmissible with regard to other issues in the case. *Knowles v. State,* 708 So.2d 549, 557 (Miss. 1998); *Brent v. State*, 632 So.2d 936, 943 (Miss.1994) (citing M.R.E. 105). We live with that imperfection in our process and try to ameliorate it where possible with limiting instructions. *Harris v. State,* 731 So.2d 1125, 1133 (Miss. 1999); *Bounds v. State,* 688 So.2d 1362, 1371 (Miss.1997) (citing *Smith v. State,* 656 So.2d 95, 100 (Miss.1995)); *Johnson v. State,* 666 So.2d 499, 504 (Miss. 1995). That tolerance should not be viewed as a license to introduce evidence which has no relevance to any of the issues being tried. It follows that all evidence admitted in the guilt phase of one trial, should not be ipso facto admissible in a second trial where the issues are different.

¶34. To the extent that West's prior testimony was relevant to aggravating or mitigating circumstances or to the circumstances of the crime, it was admissible. Prior bad acts used for impeachment was not, in my view, admissible at the behest of the State which offered the prior testimony. It should suffice to repeat what I wrote in dissent in *Mack v. State*:

> If we accept the view that the reasons relied upon by the trial court, that is, *Jackson* and the instruction, are insufficient, we are left with the question whether the procedure utilized is a fair construction of the statute and comports with due process of law and Eighth Amendment death penalty jurisprudence. We must begin the statutory analysis with the acknowledgment that aggravators are statutorily limited. Evidence not offered in relation to the statutory aggravators, Enmund[1] factors mitigation, or bona fide rebuttal to mitigation, should be excluded.

> Subsection (5) of 99-19-101 plainly states that the aggravating circumstances "shall be limited" to the eight aggravating circumstances listed. Read in conjunction with subsection (1), the State is limited to introducing evidence relevant to one or more aggravating circumstances. *Coleman v. State*, 378 So.2d 640, 648 (Miss.1979); *Balfour v. State*, 598 So.2d 731, 747-48 (Miss.1992). Our statute responds to the command of the Eighth Amendment to the Constitution of the United States that any scheme for imposing the penalty of death must provide a "meaningful basis for distinguishing the few cases in which death is imposed from the many cases in which it is not." *Gregg v. Georgia*, 428

U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976); quoting *Furman v. Georgia*, 408 U.S. 238, 313, 92 S.Ct. 2726, 2764, 33 L.Ed.2d 346 (1972).

*While we have approved, in some instances, the grant of a motion to consider evidence adduced at the guilt phase, e. g. **Hill**, there should be no question that a proper objection might result in the exclusion of evidence adduced at that stage but improper for the sentencing phase. An example occurred in the instant case. Mack objected to a portion of that evidence from the guilt phase which was offered by the state. The trial court sustained the objection and the evidence was excluded. Similarly, it would seem logical to expect that, for example, a court faced with an objection to prior crimes evidence used for impeachment or some other purpose at the guilt phase, but not fitting the category of crime eligible as an aggravator, might be excluded.* Moreover, as appears here, there are instances in which evidentiary errors are made during the guilt phase which might be deemed harmless on that issue but take on added gravity in the sentencing phase.

*Mack v. State*, 650 So.2d 1289, 1336 (Miss. 1994) (Banks, J., dissenting) (emphasis in italics supplied).

¶35. West had not been convicted for the murder in Alabama. It was not relevant to the aggravating or mitigating circumstances, not relevant to an *Enmund* factor and not related to the circumstances of the crime. It should have been excluded. Therefore, I would reverse and remand for a new trial.

1. *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L.Ed.2d 1140 (1982), requires findings now codified in our statute at Miss. Code Ann. § 99-19-101(7) (Supp.1993).