555 So.2d 59 (1989)
Willie CARR
v.
STATE of Mississippi.
No. 07-KA-58909.
Supreme Court of Mississippi.
December 13, 1989.
*60 Tom T. Ross, Jr., Ross Hunt Spell & Ross, Clarksdale, for appellant.
Mike C. Moore, Atty. Gen., Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:

I.
Willie Carr was convicted by a jury in Coahoma County, Mississippi, on each count of a two-count indictment charging robbery and burglary of an inhabited dwelling. He was sentenced to 10 years on each count, to run consecutively. He raises two (2) issues on appeal, both concerning the failure to excuse jury members. We affirm.

II.

STANDARD OF REVIEW
The determination of whether a juror is fair and impartial is a judicial question. This Court will not set aside a trial court's determination that a juror is fair and impartial unless such determination clearly appears wrong. King v. State, 421 So.2d 1009, 1016 (Miss. 1982). See also Brown v. State, 529 So.2d 537, 539 (Miss. 1988); Odom v. State, 355 So.2d 1381 (Miss. 1978); Donahue v. State, 142 Miss. 20, 107 So. 15 (1921); Jones v. State, 133 Miss. 684, 98 So. 150 (1923). With these standards in mind, we now turn to the assignments of error.

ASSIGNMENT OF ERROR NO. I.
The Trial Court Erred in Not Excusing Juror # 9.
The trial in the case sub judice commenced on July 16, 1987, with the voir dire of the prospective jurors. The grounds for this assignment comes from that voir dire.
Carr contends that the trial court erred in not excusing juror # 9 on the panel for cause and as a result he was denied a trial by a fair and impartial jury. He contends he was forced to accept juror # 9 because he had exhausted his peremptory challenges and cites Mhoon v. State, 464 So.2d 77 (Miss. 1985), King v. State, 421 So.2d 1009 (Miss. 1982), Billiot v. State, 454 So.2d 445 (Miss. 1984) and 47 Am.Jur.2d § 271 at page 848 as support.

A.
The procedure for jury selection in the case sub judice was as follows: 1) Voir dire of jury panel consisting of 42 jurors in open court, first by the Court, followed by the State, and finally, defense counsel; 2) jury selection conducted in chambers. The process followed in chambers was as follows: 1) challenges for cause by the State; 2) challenges for cause by defense counsel, followed by individual voir dire, in chambers, first by the trial court, followed by the State, and finally defense counsel; 3) peremptory challenges exercised by the *61 State and defense counsel, six to a side; and 4) one (1) challenge to alternate jurors by the State and defense counsel.
The State challenged four (4) jurors for cause, three (3) of which were granted. Defense counsel challenged eight (8) jurors for cause, five (5) of which were granted. Four (4) of the jurors challenged by defense counsel were individually voir dired in chambers. Thereafter, all six (6) peremptory challenges were used by the State and defense counsel. The State did not challenge the alternate jurors; the defense exercised its challenge to the alternate jurors.

B.
The victim in the case sub judice, Freeman Sherrard, was 84 years old. During the voir dire conducted in open court, the defense asked the following question:
BY MR. ROSS: Okay. Today the man that had his home robbed  and once again, I do not think we are going to put up any fight that this gentleman was not the victim of any kind of crime  is an older man, Mr. Freeman Sherrard. If you saw him, it was kind of hard for him to get in. And to tell you the truth, I do not know how old he is. Would the fact that he is an older man, does anybody have any sympathy for him that they could not put aside just because he is an older man?
Obviously, as we said the other day, everybody has got sympathy for victims of crime. But can each of you put that away? I am going to be like Mr. Mellen. Please nod so I can tell if you are saying yes or no or something. Can everybody put away that?
Does anybody have a parent or friend that is elderly that they might associate Mr. Sherrard with them in the back of their mind? It is a possibility that sympathy may be there and I can understand that.
Two jurors responded to this question: juror # 4 and juror # 9.
Juror Number 4 responded that she had elderly parents and did not think she could put that aside and be a fair juror. Juror # 4 was subsequently challenged by the defense for cause. Following examination in chambers by the Court, the State and the defense, juror # 4 was excused for cause.
The other juror who responded, juror # 9, is the subject of the assignment. The following is a verbatim account of the exchange between juror # 9 and defense counsel that occurred in open court as a result of the foregoing question:
BY JUROR NO. 9: My mother is 80.
BY THE COURT: I am sorry, ... . I could not hear what you said.
BY [JUROR # 9]: I said my mother is 80.
BY MR. ROSS: ... could you put aside that sympathy?
BY [JUROR # 9]: I do not know.
BY MR. ROSS: You do not know if you could? Do you think that that sympathy might affect your ability to be a fair juror?
BY [JUROR # 9]: It might. I cannot give you a definite answer.
BY MR. ROSS: Would it be a fair statement to say that you just could not give us an answer until you heard the proof maybe?
BY [JUROR # 9]: It might.
BY MR. ROSS: I am sorry?
BY [JUROR # 9]: Yeah.
BY MR. ROSS: Would that be a fair statement?
BY [JUROR # 9]: Yes.
Following the voir dire, the defendant, counsel, court and court reporter retired to chambers for the selection of the jury. The challenges for cause were taken up first. The defense challenged juror # 9 on the basis of her responses outlined above. Juror # 9 was brought into chambers and questioned separately by the Court and the State; defense counsel asked no questions. Portions of that proceedings relative to juror # 9 follow.
BY THE COURT: Could you put the fact that your parents are older aside and reach a verdict in this case based solely on the evidence that you hear in the courtroom and not be influenced by *62 the fact that the victim in the case was an older person?
A. [BY JUROR # 9] I really do not know.
BY THE COURT: You do not know whether you could or not?
A. Uh, uh.
BY THE COURT: I assume you are saying that there is a possibility at least that you would be biased in favor of the victim rather than the defendant?
A. I feel like it would make me more sympathetic toward the older person.
BY THE COURT: You could not put that aside?
A. I do not know if I could emotionally.
* * * * * *
Q. [BY ASSISTANT DISTRICT ATTORNEY] Now I understand you are sympathetic toward older people because I am, and maybe toward children, too; young ones and older ones. But would that just cause you to be unfair toward him in receiving a fair trial?
A. No, it would not.
The Court found that juror # 9 stated that she would be fair in spite of her sympathy and did not excuse juror # 9 for cause.

C.
It is the duty of the court to ensure that a fair and impartial jury is empaneled. King v. State, 421 So.2d 1009 (Miss. 1982), cert. denied 461 U.S. 919, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983). A close examination of the record does not show that juror # 9 had any fixed opinion about the guilt or innocence of Carr. See Rush v. State, 278 So.2d 456, 458 (Miss. 1973). It appears on the basis of her answers that juror # 9 should have been excused for cause; however, after careful consideration of the record as a whole, we find Carr suffered no actual prejudice. Therefore, we find that this error was harmless beyond a reasonable doubt. United States v. Hasting, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983); Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 827-28, 17 L.Ed.2d 705 (1967).
Carr's second argument on this assignment seems to be that he was forced to accept juror # 9 because he had exhausted his peremptory challenges, citing Billiot v. State, 454 So.2d 445 (Miss. 1984). In Billiot a challenge to a juror for cause was denied. Thereafter the defense "promptly peremptorily excused her so that she did not sit on the panel. At the time this juror was peremptorily excused, appellant had not exhausted his peremptory challenges ..." Id.
The record in the case sub judice reflects that challenges for cause were taken up prior to peremptory challenges. The record reflects that Carr exercised all six of his peremptory challenges, but does not reflect how Carr exercised his peremptory challenges. This argument has no merit.
ASSIGNMENT OF ERROR NO. II.
The Trial Court Erred in Failing to Grant a New Trial to the Appellant When It Was Found That Juror # 20 Had a Prior Matter Existing Before the Court.
This assignment deals with juror competency. Carr contends that one of the jurors who served on the trial, juror # 20, was a prosecuting witness in a case then pending in the Circuit Court of Coahoma County, Mississippi and this fact made him incompetent to serve. Carr also argues that even though Baker was unaware of the pending suit, the District Attorney knew and should have disclosed this information to the trial court, citing Marshall Durbin, Inc. v. Tew, 381 So.2d 152 (Miss. 1980) as support.
An examination of the transcript of the post-trial motion hearing regarding juror # 20 shows the parties stipulated to the following facts:
1. Mr. Mellen, a member of the District Attorney's Office in Coahoma County, Mississippi, conducted the trial of Carr on July 16 and 17, 1987;
2. The District Attorney's Office presented to the Grand Jury on July 13, 1987 the cases against David Kyle Caton and Vicki Lynn Noble for the burglary of juror # 20's business, from which indictments issued and were prepared by the District Attorney's Office;

*63 3. The first week of the term began July 13, 1987;
4. Trials were conducted during the first week in which Mellen and Ross, defense attorney in the case sub judice, participated;
5. Juror # 20 was on the jury panel called for the week of July 13, 1987;
6. The verdict in the case at bar was reached at 10:22 a.m. on the morning of July 17, 1987 and was returned in open court at 10:25 a.m. that same day;
7. At some point during the week of July 13, 1987 Caton and Noble were arrested pursuant to indictment;
8. Arraignment for Caton was conducted on July 13, 1987 at 11:15 a.m., approximately one (1) hour following the verdict in Carr's trial.

A.
Juror competency is governed by § 13-5-1 of the Mississippi Code. The pertinent portion of § 13-5-1, entitled "Who are competent jurors; determination of literacy." reads:
No juror shall serve who has a case of his own pending in that court, provided there are sufficient qualified jurors in the district, and for trial at that term.
Each case in which the competency of a juror is challenged "must be decided on an ad hoc basis considering the facts then before the court." Brown v. State, 529 So.2d 537, 539 (Miss. 1988) and cases cited therein. The rule to be followed when discovery is made after trial "that a prospective juror failed to respond to a relevant and direct question concerning facts within the juror's knowledge which had a bearing on the juror's competence to serve" King v. State, 421 So.2d 1009, 1015 (Miss. 1982) is found in Odom v. State, 355 So.2d 1381 (Miss. 1978):
Therefore, we hold that where, as here, a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trial, determine whether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court's determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror's failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered. It is, of course, a judicial question as to whether a jury is fair and impartial and the court's judgment will not be disturbed unless it appears clearly that it is wrong.
Id. at 1383. This rule has been consistently followed by this Court. See Brown v. State, 529 So.2d 537, 539 (Miss. 1988); Stevens v. State, 513 So.2d 603, 605 (Miss. 1987); Tolbert v. State, 511 So.2d 1368, 1377-78 (Miss. 1987); Mhoon v. State, 464 So.2d 77, 81 (Miss. 1985); and Logan v. State, 465 So.2d 339, 340 (Miss. 1985).
Applying the Odom factors to the case sub judice indicates that the question propounded to juror # 20 during open court voir dire was relevant and unambiguous. However, the facts developed establish that juror # 20 lacked not only substantial knowledge, but indeed any knowledge whatsoever of the information sought to be elicited, ie. the status of his case(s) before the trial court at the time of Carr's trial. On the basis of these facts, we find that no prejudice to Carr could be inferred.
Carr, relying on Marshall Durbin, Inc. v. Tew, 381 So.2d 152 (Miss. 1980), contends that reversal on this assignment is mandated because counsel for the State failed to inform the Court of the pending matter involving juror # 20.
Marshall Durbin was a civil case in which counsel for the Plaintiff had represented a prospective juror two (2) weeks prior to the Marshall Durbin trial. Neither the prospective juror nor Plaintiff's counsel disclosed this information to the trial court. The failure to disclose led this Court "to the inescapable conclusion that the defendant was prejudiced." This Court held that the attorney, "as an officer of the court, *64 was under a duty to disclose his relationship with the juror, and his failure to do so, under the facts presented, causes us to reverse this case. In order to avoid any suggestion of impropriety, counsel should always disclose and bring to the attention of the court and opposing counsel this type of relationship with prospective jurors." Id. at 155.
The record in the case sub judice does not reveal the existence of any relationship between counsel for the State, Mellen, and juror # 20 at the time Carr's trial began. Juror # 20 did not conceal his involvement as a victim in prior burglaries and he answered fully when asked if he had come to court on those burglaries. Additionally, juror # 20 stated that he could be, and would be, a fair and impartial juror. Based on these facts, we find that Carr suffered no prejudice because juror # 20 served on this jury, the trial court was not clearly wrong in denying a new trial, and neither reversal nor a new trial is required. This assignment is without merit.
Accordingly, the conviction and sentence of Willie Carr are affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.