# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-KA-00544-SCT

*RANDY LAMAR TAPPER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2009 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | ANTHONY N. LAWRENCE, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/26/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Randy Lamar Tapper was convicted by a Jackson County Circuit Court jury on two counts of sexual battery and five counts of touching of a child for lustful purposes. Tapper was sentenced to life imprisonment on each count of sexual battery and to fifteen years on each count of touching of a child for lustful purposes, with all sentences to run consecutively. After the trial judge denied his Motion for Judgment Notwithstanding the Verdicts, or in the Alternative, a New Trial, Tapper perfected this appeal, alleging errors at the trial-court level.

Finding Tapper's assignments of error to be without merit, we affirm the judgment of the Circuit Court of Jackson County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2. The mother of C.C. and L.P.,[1] the two victims, testified at trial that she gave her daughters permission to play at Randy Tapper's house with his daughter during the summer of 2006. The two girls spent the weekend of August 18, 2006, with Tapper. After the girls returned home the following Monday, they came into their residence by themselves and went to bathe. Their mother discovered that their vaginal areas were red, and the girls told her that they were "burning." The girls were then taken to the emergency room.

¶3. Toby Nix, an emergency-room staff nurse at Singing River Hospital, treated C.C. on August 20, 2006. Nix testified to conducting a sexual-assault examination on C.C. and to finding erythema, or redness, in C.C.'s vaginal area and a single pinworm in the hymenal area. Catherine Shaver, also an emergency-room nurse at Singing River Hospital, examined L.P. on August 20 and testified to noticing erythema in L.P.'s vagina and moist secretions. Further, Nicole Tapper, Randy Tapper's wife, testified that during the summer of 2006, C.C. and L.P. would stay the night at her home and sleep with her husband.

¶4. During her testimony, L.P. asserted that Tapper touched her "wrong spot," or vagina, and her leg with his hand and his penis. She testified that Tapper attempted to put his "wrong spot" into her "wrong spot," which caused her to scream. L.P. also testified to seeing Tapper

---

[1]The two minor victims will be referred to as C.C. and L.P. At the time of the incidents, C.C. was six years old, and L.P. was eight years old.

2

try to put his "wrong spot" into her sister's, C.C.'s, "wrong spot" as well. L.P. stated that Tapper had touched her "wrong spot" with his "wrong spot" (penis) about five times over the summer of 2006. Nurse Shaver also testified that at the emergency room, L.P. told her that Tapper had put his penis between her buttocks and her legs, and he had threatened to hurt her and her parents. C.C. testified that Tapper touched her "coochie," or vagina, with his hand; however, during trial, she could not remember many events from the time in question. Nurse Nix testified that C.C. had told her that Tapper had touched her vagina with his penis and his finger.

¶5.     Laura Greer, the former program coordinator for the South Mississippi Child Advocacy Center, testified that she had performed forensic interviews with L.P. and C.C., and the jury was played a tape of these interviews. S.F., a minor,[2] also testified that she and her sister would spend the night at Tapper's house when she was nine years old and her sister was eight. She stated that Tapper would "always try to take his private and put it in mine." S.F. further testified that Tapper had threatened to kill her if she told anyone.

¶6.     Tapper testified in his own defense. He denied sexually abusing or inappropriately touching either L.P. or C.C. Tapper stated that the two girls had made up the allegations "[b]ecause [their] mother knew that I knew there was inappropriate things going on inside

_____

[2]S.F. was thirteen years old at the time of the trial.

her home, and I'm afraid she knew that I was going to turn her in for them."[3]  Also, he accused another person of S.F.'s molestation.  The defense rested after Tapper's testimony.

¶7.    The jury returned verdicts finding Tapper guilty of one count of sexual battery upon C.C., one count of touching of a child for lustful purposes (touching) upon C.C., one count of sexual battery upon L.P., and four counts of touching upon L.P.  The trial court sentenced Tapper to life in the custody of the Mississippi Department of Corrections on both counts of sexual battery and to fifteen years on each count of touching, all to run consecutively.  After a hearing, on Tapper's Motion for Judgment Notwithstanding the Verdicts, or in the Alternative, a New Trial, the trial court entered an order denying Tapper's motion.  Thus, Tapper appealed to this Court.

### DISCUSSION

¶8.    Tapper presents three issues for this Court's consideration: (1) whether the trial court violated Tapper's fundamental right to a fair and impartial jury by failing to excuse jurors for cause; (2) whether the trial court erred in denying the motion to quash the indictment for not adequately informing Tapper of the nature of the charges against him; and (3) whether Tapper's convictions for touching merge with his convictions for sexual battery and therefore violate his rights under the Double Jeopardy Clause of the United States Constitution.

¶9.    We now restate the issues for the sake of clarity in today's discussion.

_____

[3]This testimony from Tapper was during the State's cross examination of him. Later on in the State's cross-examination, the following occurred: "Q. Mr. Tapper, you know that [L.P.] has watched a ponographic [sic] movie, that's what you're telling us? A. I know that inappropriate things goes on inside that trailer; yes sir, I do."

4

**I.    WHETHER THE TRIAL COURT ERRED IN FAILING TO EXCUSE JURORS FOR CAUSE.**

¶10.    "The determination of whether a juror is fair or impartial is a judicial question, and it will not be set aside except where there is a finding that the determination clearly appears to be wrong." *West v. State*, 820 So. 2d 668, 671 (Miss. 2001) (citing *Carr v. State*, 555 So. 2d 59, 60 (Miss. 1989)). "[T]his Court will treat with deference a venire person's assertions of impartiality." *Barfield v. State*, 22 So. 3d 1175, 1184-85 (Miss. 2009) (citing *Scott v. Ball*, 595 So. 2d 848, 850 (Miss. 1992)).

¶11.    Tapper asserts that the trial court erred in failing to excuse three jurors for cause. He also contends that it was error for the trial court to grant a challenge for cause by the State. Specifically, Tapper argues that jurors number 6, 9, and 31 should have been struck for cause because they each declared that Tapper should have to prove his innocence in clear contradiction to Tapper's fundamental right not to testify. The State moved to strike juror number 23 for cause, and the trial court granted this challenge because that juror's brother had been prosecuted by the same [prosecutor's] office and tried by the same judge for fondling, and the juror stated that he did not believe his brother's trial was fair. Tapper, however, asserts that "the disparate treatment by the trial court of defense counsel's motions as compared to the State's motion cannot be reconciled." Tapper's argument with respect to juror number 23 is simply without merit. "Any juror shall be excluded . . . if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error." Miss. Code Ann. § 13-5-79 (Rev. 2002).

¶12. Tapper also ultimately challenged jurors number 6, 9, and 31 peremptorily. A prerequisite to Tapper's claim on appeal "is a showing that he had exhausted all of his peremptory challenges and that the incompetent juror was forced upon him by the trial court's erroneous ruling." *Chisolm v. State*, 529 So. 2d 635, 639 (Miss. 1988); *see Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988) (the loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury).

¶13. During the jury-selection conference, defense counsel challenged jurors number 6, 9, and 31 for cause, and after hearing arguments from the prosecutor and defense counsel, the trial judge refused to remove these jurors for cause. Eventually, defense counsel exercised peremptory challenge D-2 on juror number 6, peremptory challenge D-4 on juror number 9, and peremptory challenge D-10[4] on juror number 31. Therefore, none of these challenged jurors sat on the trial jury.

¶14. In *Christmas v. State*, 10 So. 3d 413, 423 (Miss. 2009), we reiterated:

> This Court has explained that a prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is a showing that the defendant had exhausted all of his peremptory challenges *and*

---

[4]Tapper was on trial on a grand-jury indictment charging him with two counts of sexual battery and five counts of touching of a child for lustful purposes. The two counts of sexual battery were alleged to be violations of Mississippi Code Section 97-3-95(1)(d) (Rev. 2006), thus meaning that if convicted, Tapper stood the possibility of being sentenced to life imprisonment. Miss. Code Ann. § 97-3-101(3) (Rev. 2006). Therefore, based on the sexual-battery counts, Tapper was on trial for the alleged commission of capital offenses, as defined by Mississippi Code Section 1-3-4 (Rev. 2005). Thus, Tapper was entitled to twelve peremptory challenges. URCCC 10.01.

*that the incompetent juror was forced by the trial court's erroneous ruling to sit on the jury.* **Chisolm v. State**, 529 So. 2d 635, 639 (Miss. 1988)

**Christmas**, 10 So. 3d at 423 (emphasis added) (citing **Mettetal v. State**, 615 So. 2d 600, 603 (Miss. 1993)).

¶15.    While the record reveals that Tapper had exercised all of his twelve peremptory challenges, Tapper is unable to show that any of these three challenged jurors were forced upon him by eventually sitting on the trial jury. **Christmas**, 10 So. 3d at 423.  Thus, Tapper's claim must fail.  After defense counsel exercised peremptory challenge D-10 on juror number 31, Tapper, through counsel, exercised peremptory challenge D-11 on juror number 33 (juror number 32 had been struck for cause), and peremptory challenge D-12 on juror number 41. Therefore, according to the record, Tapper, through counsel, accepted as members of the trial jury juror number 36 and juror number 38, before exercising peremptory challenge D-12 on juror number 41.

¶16.    For these reasons, we find this issue to be without merit.

## II.    WHETHER TAPPER'S INDICTMENT SHOULD HAVE BEEN QUASHED.

¶17.     The question of whether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or *de novo* review, by this Court. **Montgomery v. State**, 891 So. 2d 179, 185 (Miss. 2004) (citing **Nguyen v. State**, 761 So. 2d 873, 874 (Miss. 2000); **Peterson v. State**, 671 So. 2d 647 (Miss. 1996)).

¶18.    Before turning to our discussion of Counts IV, V, VI, and VII of the indictment, which counts are the focus of Tapper's argument on this issue, we briefly mention the first three

7

counts. Count I charged Tapper with sexual battery related to C.C. "on or between August 19, 2006 and August 21, 2006" by "placing his finger in her vagina." Count II charged Tapper with child-fondling related to C.C. "on or between August 19, 2006 and August 21, 2006" by handling, touching, or rubbing with his hand or any part of his body "the vagina of C.C." Count III charged Tapper with sexual battery related to L.P. "on or between August 19, 2006 and August 21, 2006 . . . [by] placing his finger in her vagina."

¶19.    In *Morris v. State*, 595 So. 2d 840 (Miss. 1991), although there was evidence that the defendant had sexually molested his stepdaughter over a period of time several years earlier, the defendant was indicted on one count of touching a child for lustful purposes and two counts of sexual battery, occurring with the same stepdaughter, by then fifteen years of age, between March and May, 1986. *Id.* at 841. The victim testified that she had endured six years of continual sexual molestation at the hands of her stepfather, the defendant. *Id.*  The defendant claimed that his fifteen-year-old, honor-roll stepdaughter should have been capable of recalling specific dates on which the acts occurred so that he could prepare an alibi defense. *Id.* at 841-42. We are not informed in *Morris* of the specific language of the indictment charging the defendant with two counts of sexual battery. We know only that, in the end, after a discussion of *Wilson v. State*, 515 So. 2d 1181 (Miss. 1987), and *McCullum v. State*, 487 So. 2d 1335 (Miss. 1986), the Court in *Morris* concluded that "the victim's testimony amply illustrates the fact that the State could not narrow the time frame any more than it did," and that the defendant "was fully and fairly advised of the charge against him." *Id.* at 842.

¶20. In *Price v. State*, 898 So. 2d 641 (Miss. 2005), the defendant was convicted of three counts of statutory rape. Each count involved the same victim and involved identical allegations that the defendant had committed the crime of statutory rape "by the insertion of his penis into the vagina of [the victim]." *Id.* at 654-55. The main difference in each of the three counts was the alleged dates that these acts occurred, with one count alleging that the act occurred "[d]uring the month of September, 1992," one count alleging that the act occurred "[b]etween the 15th day of December, A.D., 1992 and the 25th day of December, A.D., 1992," and one count alleging that the act occurred "[d]uring the month of August, 1995." *Id.* Citing *Morris* and Uniform Rule of Circuit and County Court Procedure 7.06(5), this Court found that the statutory rape charges contained in each of the three counts "were sufficiently specific as to apprise the defendant of the charges against [the defendant]." *Id.* at 655.

¶21. Without question, consistent with *Morris* and *Price*, and Uniform Rule 7.06, the language of Counts I, II, and III sufficiently apprised Tapper of the charges against him so as to allow him to prepare a defense.

¶22. Now we address Tapper's main argument. Tapper argues that the indictment, as it relates to counts IV, V, VI, and VII, failed adequately to notify him of the nature and cause of the accusation, rendering the indictment defective. These counts of the indictment all stated the following:

in Jackson County, Mississippi, on or between June 1, 2006 and August 19,[5] 2006, being at the time in question over the age of eighteen (18) years, for the purpose of gratifying his lust, or indulging his depraved licentious sexual desires, did unlawfully, willfully and feloniously handle, touch or rub with this hand, or any party of his body, or any member thereof, the vagina of [L.P.], a child who was at the time in question under the age of sixteen (16) years, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.[6]

Tapper also asserts that the failure of the indictment to allege more specific dates denied him the opportunity to present any defense other than denial. The State, however, argues that the counts of the indictment clearly and sufficiently informed Tapper of the felonies with which he was charged. "The indictment upon which the defendant is to be tried shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him . . . ." *Nguyen*, 761 So. 2d at 874-75 (citations omitted). In a child sexual-abuse case, a specific date is not required so long as the defendant is fully and fairly informed of the charges against him. *Eakes v. State*, 665 So. 2d 852, 860 (Miss. 1995) (citing *Morris v. State*, 595 So. 2d 840, 842 (Miss. 1991)).

¶23. As noted by the dissent, this Court has not been confronted with the issue of whether multi-count indictments which allege identical acts of conduct are sufficient to put the

---

[5]Count IV actually alleged the end date as being August 20, 2006, while Counts V-VII did in fact allege the end date as being August 19, 2006.

[6]By order of the trial court, Counts IV, V, VI, and VII were amended to state "on or between June 1, 2006 and August 17, 2006."

defendant on notice as to "the essential facts constituting the offense charged and . . . the nature and cause of the accusation." URCCC 7.06.

¶24.    We first state that, consistent with our discussion above concerning Counts I, II, and III, the time frame of the acts committed by Tapper as alleged in Counts IV, V, VI, and VII ("on or between June 1, 2006 and August 17, 2006") was sufficient to apprise Tapper concerning the date-and-time requirement of Uniform Rule of Circuit and County Court Practice 7.06(5). The issue is as to the four acts allegedly committed by Tapper upon L.P. as set out in these latter four counts.

¶25.    We first note that the dissent relies in part on ***Moses v. State***, 795 So. 2d 569 (Miss. Ct. App. 2001). In ***Moses***, the Court of Appeals stated:

> No formal amendment of the indictment was ever undertaken to narrow the dates of the alleged offenses or to attempt to differentiate the facts of the separate alleged incidents by providing even the sketchiest facts of what was alleged to have occurred.
> . . .
> In the case before us, it is patently clear that the State, in drafting the repetitively identical and essentially uninformative counts of this indictment, made no effort to narrow the dates of the separate offenses in any meaningful way. We do not, therefore, face the situation where the State, after its best investigative effort, could only narrow the span of time for an offense to a period in excess of three years. The problems with requiring a defendant to present a defense to such an accusation seem self-evident but we may leave for another day the question of whether the problems are of sufficient gravity to bar the State from proceeding with a prosecution in that circumstance. In this case, there is no question but that the State was aware of information that would have easily permitted it to provide substantially shortened ranges of dates for each offense, together with other relevant facts that would have more specifically identified the alleged incident upon which that count was based. For reasons not apparent in this record, and for which we can find no reasonable excuse, the State declined to do so, proceeding instead to subject Moses to prosecution on multiple criminal counts relying solely on an

11

> indictment that was fundamentally ineffective to properly inform him of even the most basic circumstances giving rise to the charges against him.

*Moses*, 795 So. 2d at 572. This is not the situation in today's case. In our case today, there is no evidence "that the State was aware of information that would have easily permitted it to provide substantially shortened ranges of dates for each offense, together with other relevant facts that would have more specifically identified the alleged incident upon which the count was based." Further, the State in today's case narrowed the time frame to less than three months, not a three-year time span as in *Moses*, and undertook properly to seek amendment of the indictment as necessary. In our case today, it appears from the record and testimony, that the State could not narrow the time frame or provide more specific details than it did.

¶26. Laying aside the testimony of the two emergency-room nurses and the program coordinator for the South Mississippi Child Advocacy Center, we focus on the testimony of L.P. as to these four child-fondling counts. L.P. called Tapper "Uncle Randy." L.P. testified that during the summer of 2006, every time L.P. and C.C. spent the night at Tapper's house, they slept in the bed with Tapper, except for one occasion. L.P. testified that Tapper would touch her "wrong spot" (vagina) with his "wrong spot" ( penis). L.P. could not remember the dates when this occurred. The prosecutor also asked L.P. if Tapper "ever tried to put his wrong spot in your wrong spot," and L. P. answered "[y]es, sir." L.P. reacted to Tapper's actions by screaming. The prosecutor asked L.P. how many times during the summer of 2006

12

Tapper touched her, and L.P. responded "[a]bout five." L.P. again reiterated that the touching involved Tapper's "wrong spot" touching her "wrong spot."

¶27. Tapper's defense was that he did not sexually abuse or inappropriately touch L.P. or C.C. Tapper testified that the mother of L.P. and C.C. "coached" the girls into making these false charges because the mother "knew that I knew there was inappropriate things going on inside her home, and I'm afraid she knew that I was going to turn her in for them." The cold, hard facts are that, even if these young, immature girls had the ability to describe to the prosecutor in adult terms and in the most graphic detail the acts which they said Tapper committed upon them, Tapper would not have been in any better position to prepare his defense "that he didn't do it," and that the false charges against him were a result of the girls' mother coaching them because the mother feared being reported by Tapper, for all the "inappropriate things going on inside [the mother's] home."

¶28. While we implore our prosecutors to be as specific as possible in drafting indictments, consistent with the provisions of Uniform Rule of Circuit and County Court Practice 7.06, in all cases, but specifically in cases involving allegations of sex offenses committed upon minor children, we find that the facts and circumstances of today's case lead us to the conclusion that the trial court committed no error in refusing to quash this multi-count indictment, as amended, handed down against Tapper by the Jackson County grand jury. For the reasons stated, this issue is without merit.

### III. WHETHER TAPPER'S CONVICTION FOR TOUCHING MERGES WITH HIS CONVICTION FOR SEXUAL BATTERY.

13

¶29. Double-jeopardy claims also are questions of law and are reviewed *de novo*. ***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999); *see also* ***Deeds v. State***, 27 So. 3d 1135, 1139 (Miss. 2009).

¶30. Tapper asserts, citing ***Friley v. State***, 879 So. 2d 1031, 1035 (Miss. 2004), that under Mississippi law, touching of a child for lustful purposes is a lesser-included offense of sexual battery with penetration, and therefore, the two offenses merge, making Tapper's conviction for count two of touching upon C.C. violative of the Double Jeopardy Clause of the United States Constitution. The State points out that, although this Court, in ***Friley***, did find under the "particular circumstances" that "molestation is a lesser-included offense of sexual battery" and that "[i]t is impossible to penetrate without touching," ***Friley***, 879 So. 2d at 1035, Tapper ignores the fact that it **is possible** to commit an unlawful touching without committing sexual battery. Sexual battery requires penetration, while unlawful touching does not. In today's case, the sexual-battery counts concern events separate from the unlawful-touching counts. There was testimony that Tapper had touched C.C. with both his finger and his penis, and evidence was presented showing penetration of C.C. As previously stated by this Court:

> Double jeopardy protects criminal defendants from being exposed to more than one prosecution for the same offense. It does not protect a defendant against different prosecutions for different offenses. ***Hughes v. State***, 401 So. 2d 1100 (Miss. 1981). It is not a legal analog to some sort of "blue light special" where a defendant, by having the foresight or good fortune to commit the same crime or different crimes in close connection to each other, gets two or more offenses for the price of one.

14

*Wright v. State*, 540 So. 2d 1, 5 (Miss. 1989); *see also* **Ball v. State**, 437 So. 2d 423, 425 (Miss. 1983) ("Temporal proximity does not generate a juridical union of separate and distinct criminal acts, nor does the presence of a common nucleus of operative facts."). The evidence presented in today's case does not support Tapper's argument that his convictions for "touching" merge with his convictions for sexual battery. Thus, this issue is without merit.

**CONCLUSION**

¶31. For the reasons stated, Randy Lamar Tapper's convictions and sentences in the Circuit Court of Jackson County on all counts are affirmed.

¶32. **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IV: CONVICTION OF TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT V: CONVICTION OF TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT VI: CONVICTION OF TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT VII: CONVICTION OF TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. ALL COUNTS SHALL RUN CONSECUTIVELY TO EACH OTHER.**

**WALLER, C.J., RANDOLPH, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., DICKINSON AND LAMAR, JJ.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶33.    I respectfully disagree with the majority's conclusion that the trial court did not err in failing to quash Counts IV, V, VI, and VII of Tapper's indictment.

¶34.    The Sixth Amendment of the federal constitution guarantees that "In *all* criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI.  The Mississippi Constitution also grants this right to those accused: "In *all* criminal prosecutions the accused shall have a right . . . to demand the nature and cause of the accusation." Miss. Const. art. 3, § 26.  In Uniform Circuit and County Court Rule 7.06, this Court expounded on these constitutional provisions by requiring, among other things, that the indictment contain a "definite written statement of the essential facts constituting the offense charged," fully notifying the defendant of the nature of the charges against him.  Moreover, we require that an indictment contain "(1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." ***Berry v. State***, 996 So. 2d 782, 786 (Miss. 2008) (quoting ***Gilmer v. State***, 955 So. 2d 829, 836-37 (Miss. 2007)).

¶35. In this case, Counts IV, V, VI, and VII of Tapper's indictment were worded as follows:

> in Jackson County, Mississippi, on or between June 1, 2006, and August 19, 2006, being at the time in question over the age of eighteen (18) years, for the purpose of gratifying his lust, or indulging his depraved licentious sexual desires, did unlawfully, willfully and feloniously handle, touch or rub with his hand, or any part of his body, or any member thereof, the vagina of [L.P.] a child who was at the time in question under the age of sixteen (16) years, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

Tapper does not deny that this language adequately provides the *essential elements of the crime* of touching a child for lustful purposes in violation of Mississippi Code Section 97-5-23(1). Tapper does assert that the *essential facts* set forth in the indictment were insufficient to inform him of the nature of the charges against him. He argues that, in addition to the fact that the lengthy time span alleged in the indictment prevented him from establishing a reasonable defense, the identical and undifferentiated language in Counts IV-VII of Tapper's indictment rendered it impossible for him to put forth any kind of reasonable defense to the multiple, indistinguishable charges against him.

¶36. While this Court has not been faced with the question of whether a multi-count indictment containing identical, form-copied language in multiple counts is constitutionally sufficient, Mississippi's Court of Appeals has addressed this question in an insightful and well-reasoned opinion. In ***Moses v. State***, 795 So. 2d 569 (Miss. Ct. App. 2001), Moses was charged in a single indictment with twenty-two counts of sexual activity with two females

17

under the age of fourteen. *Id*. at 570. Counts One through Thirteen of Moses's indictment were indistinguishable, and each of those counts charged Moses as follows:

> During a period of time between June 1994 and September 1997 the defendant being a male over the age of eighteen (18) years did wilfully, unlawfully, feloniously and forcibly rape, ravish and carnally know [Child A], a female under the age of fourteen (14) years, contrary to and in violation of Section 97-3-65(1) of the Mississippi Code of 1972, as amended.

*Id*. at 570. Likewise, Count Sixteen, which charged Moses with sexual battery, was identical to Count Seventeen, and Count Eighteen, which charged Moses with gratification of lust, was identical to Counts Nineteen and Twenty-One. *Id.* A jury convicted Moses of each and all of these nineteen counts. *Id*. at 569.

¶37. Upon review, the Court of Appeals held:

> We have little doubt in determining that this indictment, in the form returned by the grand jury, did not adequately fulfill its purpose. Multiple accusations of crimes that are, word for word, identical to each other simply cannot by any logical argument provide the necessary information that a defendant is entitled to receive by way of the indictment.
>
> . . .
>
> To attempt to charge multiple separate felonies by using identical language for each crime, including an identical span of time that the crimes were alleged to have occurred, fails woefully to fulfill the fundamental purpose of an indictment.

*Id*. at 571-72. Correctly, the Court reversed each of Moses's nineteen convictions. *Id*. at 572.

¶38. The majority attempts to distinguish *Moses* by noting that, in the *Moses* case, the State had information that would have delineated between the charges but failed to provide that information to the defendant. The majority finds that no such evidence existed in the present

18

case, and that this lack of evidence somehow excuses the State from properly charging the defendant. Yet, the constitutional duty to notify the accused of the charges against him, via the indictment, rests with the State, as does the burden of proving its case beyond a reasonable doubt, and these duties are not relieved simply because the requisite information is outside the State's knowledge.

¶39. The United States Court of Appeals for the Sixth Circuit also has addressed the issue of charging a defendant with multiple, identical charges and has found that practice to be unconstitutional. In ***Valentine v. Konteh***, 395 F. 3d 626, 628 (6th Cir. 2005), Valentine had been charged with and convicted of forty counts of sexual abuse. The forty counts in the indictment entered against Valentine consisted of "20 'carbon-copy' counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was also identically worded." ***Id***. The time range during which the alleged acts occurred was from March 1, 1995, to January 16, 1996; however, the Court's analysis did not focus on whether *the specified time span* prevented Valentine from establishing a reasonable defense, but instead on whether *the multiple identical counts* prevented Valentine from establishing a reasonable defense. ***Id***. at 631-33.

¶40. In addressing this question, the federal appeals court noted that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."

19

*Id*. at 631 (quoting *Cole v. Arkansas*, 333 U.S. 196, 68 S. Ct. 514, 92 L. Ed. 644 (1948)).

The *Valentine* Court went on to say:

> If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside the victim's estimate, no evidence as to the number of incidents was presented.
>
> Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own. The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20. Nor could the jury have found him guilty of Counts 1, 3, 5, and 7, but not the rest. Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents. The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts. Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

*Id*. at 632-33.

¶41.   The Court concluded that the use of identical and undifferentiated language in the multiple counts in Valentine's indictment failed to give him adequate notice of the essential facts of the crimes charged, depriving him of the opportunity of mounting a reasonable defense. *Id*. at 636.

¶42.   Here, as in *Moses* and *Valentine*, the State's use of identical and undifferentiated language in Tapper's indictment foreclosed Tapper's having any possibility of putting forth

20

a reasonable defense. The indictment's noninclusion of the distinguishing facts unique to each charge, however slight, limited Tapper's defense to nothing more than mere denial, and left Tapper to defend himself, not against four distinct criminal acts, but against one criminal act that allegedly occurred four times, with absolutely nothing to distinguish one such occurrence from the other three. Clearly, Tapper's desire to know the basic facts he was to face at trial, including where, and approximately when, his accusers claimed they occurred, is not beyond his constitutional right to be informed of the nature and cause of the accusations against him. U.S. Const. amend. VI; Miss. Const. art. 3, § 26.

¶43. In its struggle to breathe validity into the cookie-cutter, repetitive language of Counts IV, V, VI, and VII of the Tapper indictment, the majority places reliance on this Court's decision in *Eakes v. State*, 665 So. 2d 852 (Miss. 1995), which cites *Morris v. State,* 595 So. 2d 840 (Miss. 1991). Both cases are easily distinguished from the one at hand.

¶44. In *Eakes*, 665 So. 2d at 860, the defendant was convicted of three counts of sexual battery, and claimed on appeal that the indictment was defective because, among other things, it did not contain specific dates. However, Eakes's indictment clearly distinguished each of the charged crimes from the others by alleging that they had occurred at separate and distinct times: "on, about or between December 1, 1990 and December 24, 1990; February 1, 1991 and April 20, 1991; and on or about May 11 and 12, 1991." *Id.* (internal quotations omitted).

¶45. In *Morris*, 595 So. 2d 840, the charging allegations of the one count of touching a child for lustful purposes and two counts of sexual battery that were before the court are not

21

recited in the published opinion, and that decision gives no indication that the sort of linguistic cloning afflicting Counts IV, V, VI, and VII of the Tapper indictment was under consideration by the *Morris* court. Rather, the focus in that case was on the *times* of the alleged offenses, especially on the teenaged victim's inability to testify to exact dates on which the several acts of sexual assault had occurred. Duplicative charging language simply was not the concern of the Court in the *Morris* case, and the majority's reliance on that decision is misplaced.

¶46.   Obviously, the issues raised in *Eakes* and *Morris* are vastly different from the dilemma presented in the case at bar, where four identically worded fondling episodes, all against the same child, are alleged to have occurred during a span of time that the prosecution ultimately narrowed, by amendment, to seventy-eight consecutive days ("on or between June 1, 2006 and August 17, 2006"). No one can read the four fondling counts in the Tapper indictment and determine which of the alleged events is said to have happened first, which last, or which was Number Two or Number Three. Moreover, no one can tell whether Number One, Two, Three, or Four actually was Number Five, or even Number Six. It must be remembered that the proof adduced by the prosecution included the statement of L.P. that there were "about five" fondling episodes. The indictment alleged four, which, arguably, is "about five." The same can be said of six.

¶47.   What is more, an indictment must contain "sufficient facts to enable [the defendant] to plead double jeopardy in the event of future prosecution for the same offense." *Berry*, 996 So. 2d at 786 (quoting *Gilmer*, 955 So. 2d at 836-837). *See* U.S. Const. amend. V ("nor shall

22

any person be subject for the same offence to be twice put in jeopardy of life or limb"); Miss. Const. art. 3, § 22 ("[n]o person's life or liberty shall be twice placed in jeopardy for the same offense"). Here, the vagueness of the identically worded counts in Tapper's indictment prevents him from pleading double jeopardy. Tapper, like this Court, does not know the specific acts of which he has been convicted, and he is, as this Court is, unable to ascertain whether he is currently being punished twice (or more for that matter) for a single act.

¶48. As for the evidence presented at trial, L.P. gave a mere estimate of the number of times she was molested, without providing individualized details concerning four separate occurrences. The prosecutor "proved" the four separate counts as follows:

> Q: [Addressing the child by name], how many times do you think you were touched that summer of 2006?
>
> A: About five.

No other evidence of the number of incidents was presented; therefore, there was no way for the jurors to consider each of the four counts separately, as they most certainly should have done. If the jury believed from the evidence, beyond a reasonable doubt, that Tapper was guilty of one of the counts, the only way to have found him not guilty on any one or more of the three remaining counts would have been for the jurors to have thought that the child's estimate of the number of occurrences was too high.

¶49. Despite the child's guess that the number of fondling assaults by Tapper was "about five," the grand jury indicted him for only four such offenses. As there is no statute of limitations for this crime, there is nothing to prevent a future grand jury's indicting Tapper

23

for a fifth felonious fondling of this child during the two-and-a-half-month period alleged in the indictment. Indeed, this record contains just as much evidence of five fondling offenses as it does of four. If Tapper is indicted in the future for one count of fondling this same child, during the same time period and in the same county and state, and the charge is worded exactly the same as the four fondling counts in the instant indictment, how will anyone, including this Court, be able to determine whether he previously was tried (placed in jeopardy) for a fifth identical charge? Obviously, no one will be able to do that, and Tapper will be unable to assert double jeopardy in the event of subsequent prosecution(s) for the same conduct. Given that he does not know – as the record does not disclose – *any* specific act of fondling for which he was indicted and convicted, any double jeopardy argument that may be raised by Tapper will be tenuous at best.

¶50. Under this Court's decisions and the rules it has promulgated, defendants in criminal cases are entitled to a mere fraction of the pretrial discovery information that is routinely accorded to litigants in civil cases. Because the criminally accused in Mississippi courts can get no clarification, explanation, or amplification of the charge(s) laid in an indictment by means of a bill of particulars, and comparatively little through discovery, the indictment is the defendant's main source of information about the "who, what, when, and where" of the State's accusations against him or her. *See Cumbest v. State*, 456 So. 2d 209, 221 (Miss. 1984) ("[A]n accused is not entitled to a bill of particulars on an indictment.") (citations omitted). The indictment is far more than a mere formality, and a charging document that takes a shotgun approach to accusing a person of the very same conduct, word-for-word, four

24

different times, with nothing to distinguish one charge from the others in terms of details or times, falls fatally short of properly informing the accused of the nature and cause of accusation(s), as mandated by our state and federal constitutions.

¶51. Today's decision very well could provide a disincentive for those who investigate and prosecute cases of juvenile sex abuse in our state to be diligent in their efforts to ascertain the unique circumstances that will inevitably distinguish repetitious occurrences of the same type of crime by repeat offenders against children who are victimized again and again. It is elementary that nothing ever happens in precisely the same way more than once. Deja vu is always an illusion, never a reality. I join the majority in imploring Mississippi's prosecutors "to be as specific as possible in drafting indictments, consistent with the provisions of Uniform Rule of Circuit and County Court Practice 7.06, in all cases, but specifically in cases involving allegations of sex offenses committed upon minor children."

¶52. Counts IV, V, VI, and VII of the indictment should have been quashed for failing to inform Tapper of the nature and cause of the accusations against him in violation of the Sixth Amendment of the United States Constitution and Article 3, Section 26, of the Mississippi Constitution, and because these counts are constitutionally infirm for their clear violation of the former jeopardy provisions of the Fifth Amendment to the United States Constitution and Article 3, Section 22, of the Mississippi Constitution. Accordingly, I would reverse and render Counts IV, V, VI, and VII, but I would affirm the convictions and sentences for all of the remaining counts.

**GRAVES, P.J., DICKINSON AND LAMAR, JJ., JOIN THIS OPINION.**